UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CNA INSURANCE COMPANY, LTD,** : | Case No. 1:08-CV-241 |
| **Plaintiff,** : | |
| : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** : | |
| **MENTOR MAGNETIC IMAGING, INC.,** *et al*. : | **MEMORANDUM AND ORDER** |
| **Defendants.** : | |

Pending before the Court is Third-Party Marsh USA, Inc.'s ("Marsh") Motion to Dismiss for Failure to State a Claim on Which Relief can be Granted.  (Doc. 62-1.)  For the following reasons, this motion (Doc. 62-1) is **GRANTED**.[1]

### I. BACKGROUND

On September 9, 2006, CNA Insurance Company, Ltd. ("CNA") filed suit in the United States District Court for the Southern District of New York, where it was assigned to United States District Court Judge Barbara Jones.  The complaint, for declaratory relief, asked that court to declare that CNA was not liable on a maritime contract for insurance.[2]  CNA alleged that its insurance policy only covered shipment via a particular maritime route, and that Mentor Magnetic Imaging, Inc. ("Mentor") had not shipped its goods via that route.  (Doc. 1 ¶¶ 8-9; 17-18.)  In the alternative, CNA alleged that its policy terminated prior to any damage to Mentor's shipment.  (*Id*. at ¶¶ 14-15.)

---

[1] The Court, also, **GRANTS** Mentor's motion for leave to file a supplemental brief in opposition. (Doc. 78.)

[2] According to the complaint, CNA issued this policy in response to a request from Defendant's broker, Marsh (UK) Limited. (Doc. 1 at ¶ 5.)

On December 18, 2007, Judge Jones transferred the above-captioned action to the Northern District of Ohio. (Doc. 19.) On March 4, 2007, Mentor filed its answer, as well as a counterclaim against CNA. (Doc. 29.) In its counterclaim, Mentor asserted that it had never received a copy of the insurance policy that it purchased (*id*. at 5 ¶ 5), that CNA was wrongfully denying coverage in breach of the insurance contract (*id*. at 5 ¶¶ 9-10; 13-16), that CNA's denial was in bad faith (*id*. at 6-7 ¶ 21), and that CNA had fraudulently misrepresented the terms of the insurance contract (*id*. at 7 ¶ 27).

On August 1, 2008, Mentor filed a third-party complaint against Marsh. (Doc. 46.) In this complaint, Mentor asserts that the insurance policy it purchased from CNA was offered "through Marsh" (*id*. at ¶ 7), that Marsh had a "duty to provide a copy" of the insurance policy to Mentor (*id*. at ¶ 8), and that Marsh negligently failed to fulfill that duty (*see id* at ¶ 14). Mentor asserts that, had Marsh fulfilled its duty to provide a copy of the insurance policy, Mentor would have been "in a position to avoid the possibility of violating the [insurance policy]…." (*Id*. at ¶ 13.) In the alternative, Mentor asserts that "by and through its employees, agents, and/or representatives acting on behalf of [CNA]" (*id*. at ¶ 20), Marsh had a fiduciary duty to provide a copy of the insurance policy (*id*. at ¶ 21), and that insurance coverage was "wrongfully denied" by CNA as a direct and proximate result of Marsh's breach of that duty (*id*. at 22).

On November 20, 2008, Marsh moved to dismiss Mentor's third-party complaint, on the grounds that it fails to state a claim on which relief can be granted. (Doc. 62-1.)

**II. STANDARD OF REVIEW**

The Court may dismiss all or part of a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) is directed solely at the complaint itself. *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983) (citing *Sims v. Mercy Hospital of Monroe*, 451 F.2d 171, 173 (6th Cir. 1971).) When evaluating a complaint in light of a motion to dismiss, the Court must

accept all of the plaintiff's well-pled allegations as true and resolve every doubt in the plaintiff's favor. *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)).

That said, a claim will be dismissed when it does not "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory . . . ." *Twombly*, 127 S. Ct. at 1969 (internal citations and quotations omitted, emphasis in original). A court, moreover, is not entitled to accept "legal conclusions" or "conclusory allegations" as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *United States v. Salti*, No. 07-4487, 2009 U.S. App. LEXIS 19093, at *29 n.11 (6th Cir. August 25, 2009) (citing *Iqbal*, 129 S. Ct. at 1951).

Whereas a district court could once disregard only those "allegations . . . sufficiently fantastic to defy reality as we know it," the Supreme Court recently made clear that this bar is meaningfully higher. *Courie v. Alcoa Wheel & Forged Prods.*, No. 07-4440, 2009 U.S. App. LEXIS 18561, at * 4-5 (6th Cir. August 18, 2009) (citing *Iqbal*, 129 S. Ct. at 1949; *Iqbal*, 129 S. Ct. at 1959 (Souter, J., dissenting).) To survive a motion to dismiss, the complaint must state "a <u>plausible</u> claim for relief." *Iqbal*, 129 S. Ct. at 1950 (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

Finally, it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)); *Kearney v. Dimanna*, 195 Fed. Appx. 717, 721 (10th Cir. 2006) (quoting same); *see also Am. Motorist Ins. Co. v. Custom Rubber Extrusions, Inc.*, No. 1:05-CV-2331, 2006 U.S. Dist. LEXIS 59436, at *35 (N.D. Ohio Aug. 23, 2006) ("[The Plaintiff] cannot use an opposition brief as a vehicle to amend its Complaint."). This is not a "technical

3

mouse-trap for an unduly terse plaintiff" – nothing prevents a plaintiff from moving to amend its complaint in the face of a well-reasoned motion to dismiss. *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999); *see also id.* ("If [plaintiff] had responded with an amendment to the complaint or even with an affidavit setting forth such detail, the district court certainly would not have dismissed the case out of hand."); *c.f., e.g.*, *Pittman v. Franklin*, 282 Fed. Appx. 418, 425 (6th Cir. 2008) ("[D]elay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." (quoting *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001))); *Dykstra v. Wayland Ford, Inc.*, 240 Fed. Appx. 14, 15 (6th Cir. 2007) ("[A] party that misses the deadline to amend its pleading may still be permitted to amend.").

### III. APPLICABLE LAW

#### A. Negligence Claim

To state a claim for negligence, a party must allege: (1) a duty; (2) that was breached; (3) proximately causing injury. *Morris v. Gavan*, No. 08-CV-01436, 2009 U.S. Dist. LEXIS 56880, at *7 (N.D. Ohio July 1, 2009) (citing *Chambers v. St. Mary's School*, 697 N. E. 2d 198 (Ohio 1998)); *see also Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, No. 1:03-CV-1322, 2008 U.S. Dist. LEXIS 97223, at *45 (N.D. Ohio Dec. 1, 2008) (citation omitted).[3] The existence of some duty is the threshold question for any negligence claim. *International Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 860 (1987); *Tekavec v. Van Waters & Rogers, Inc.*, 12 F. Supp. 2d 672, 681 (N.D. Ohio 1998) (citing

---

[3] The courts of Ohio conduct the separate common law analysis of "cause-in-fact," "proximate cause," and "injury" as one step. *C.f. Bowling v. Wal-Mart Stores, Inc.*, 233 Fed. Appx. 460, 467 (6th Cir. 2007) ("Tennessee's substantive law of negligence applies to Plaintiffs' claim. In Tennessee, to succeed on a suit in negligence, the plaintiff must show (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty of care; (3) the plaintiff suffered some injury or loss; (4) cause in fact; and (5) proximate cause." (citing *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996)).)

4

*Menifee v. Ohio Welding Products, Inc.*, 472 N.E.2d 707 (Ohio 1984)). Duty, moreover, is a quintessential question of law. *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 444 (6th Cir. 2009) (Kentucky law); *Estate of Jaycox v. Setty Family Veterans Residential Care Home*, 97 Fed. Appx. 640, 644 (6th Cir. 2004) ("The existence of a duty in a negligence action is a question of law for the court to determine." (quoting *Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989)).) A duty will not be found absent foreseeability: a duty to act (or not to act) in a certain manner will only be found if "a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of [that] act." *Conte v. General Housewares Corp.*, 215 F.3d 628, 636 (6th Cir. 2000) (citing *Estates of Morgan v. Fairfield Family Counseling Ctr.*, 673 N.E.2d 1311, 1319 (Ohio 1997)).

Proximate cause, for its part, is "that cause which in the natural and continued sequence of events contributes to produce the result, and without which it would not have happened." *Devonshire v. Johnston Group First Advisors*, 166 Fed. Appx. 811, 813 (6th Cir. 2006) (citing *Xirafakis et al. v. Custodio*, 2005 Ohio 2707, ¶16 (Ohio Ct. App. 2005)). Although this will usually be a question for the ultimate trier of fact, it is also true that "speculation and conjecture are insufficient as a matter of law to establish proximate cause." *Davison v. Cole Sewell Corp.*, 231 Fed. Appx. 444, 450 (6th Cir. 2007) (quoting *Davison v. Cole Sewell Corp.*, No. 2:04-CV-852, 2006 U.S. Dist. LEXIS 52162, at *15 (S.D. Ohio July 28, 2006) (citing *Whiting v. State Dep't of Mental Health*, 750 N.E.2d 644, 647 (Ohio Ct. App. 2001))).

Finally, notwithstanding the above, "a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable" in tort. *All Erection & Crane Rental Corp. v. Acordia Northwest, Inc.*, 162 Fed. Appx. 554, 559 (6th Cir. 2006). In particular, commercial parties may not recover for purely economic losses, whether or not

5

there is privity of contract. *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1029-1030 (6th Cir. 2003).[4]

### B. Fiduciary Duty Claim

An insurance agent normally does not have a fiduciary duty to its clients. *Nichols v. Schwendeman*, 2007 Ohio 6602, ¶18 (Ohio Ct. App. 2007) ("[A]n insured's reliance on his insurance agent is not sufficient, by itself, to establish a fiduciary relationship."); *Horak v. Nationwide Ins. Co.*, 2007 Ohio 3744, ¶32 (Ohio Ct. App. 2007) ("Generally, the relationship between an insurance agent and his client is not a fiduciary relationship, but rather, an ordinary business relationship.") (collecting cases); *c.f. Capitol Indem. Corp. v. Interstate Agency, Inc.,* 760 F.2d 121, 125 (6th Cir. 1985) (noting that Michigan law specifically designates insurance agents as fiduciaries).[5] Nevertheless, "if an agent

---

[4] The Sixth Circuit, citing the Supreme Court of Ohio has explained:

> Generally, damages may be characterized as either personal injury, property damage, or economic damage. "Personal injury" is, of course, self-explanatory. "Property damage" generally connotes either damages to the defective product itself or damages to other property. "Economic loss" is described as either direct or indirect. "Direct" economic loss includes the loss attributable to the decreased value of the product itself. Generally, this type of damages encompasses "the difference between the actual value of the defective product and the value it would have had had it not been defective." It may also be described as "the loss of the benefit of the bargain…." "Indirect" economic loss includes the consequential losses sustained by the purchaser of the defective product, which may include the value of production time lost and the resulting lost profits.

*HDM Flugservice Gmb*, 332 F.3d at 1028 (6th Cir. 2003) (citing *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 629 (Ohio 1989)).

[5] The Court does take note of two Report & Recommendations in the Southern District of Ohio stating only that "it is unclear whether an insurance agent can be liable to an insured for bad faith or breach of fiduciary duty." *C & R, Inc. v. Liberty Mut. Fire Ins. Co.*, No. 2:05-cv-1124, 2006 U.S. Dist. LEXIS 24785, at *8 (S.D. Ohio Feb. 21, 2006) (quoting *Wiseman v. Universal Underwriters Insurance Co.*, No. 2:04-cv-1110, 2005 U.S. Dist. LEXIS 11668 (S.D. Ohio June 13, 2005)). So, too, the Court notes that one of its sister courts issued a ruling that could conceivably be read to assume the existence of an agency relationship between Ohio insurance agents and their customers, although that court did not have need to discuss the relevant caselaw or any special facts that might have given rise to agency. *See Fort Dearborn Life Ins. Co. v. Medical Mut. of Ohio*, No. 1:08-cv-433, 2008 U.S. Dist. LEXIS 33830, at *10 (N.D. Ohio Apr. 24, 2008). The intermediate appellate courts of Ohio, however, appear to be uniform in holding that no such duty ordinarily exists. The Court also observes, moreover, that when states do impose a fiduciary duty on insurance agents, it seems that they typically do so through statute.

knows that the client is relying upon his expertise, then the agent owes a . . . duty to exercise reasonable care in advising the client." *Advent v. Allstate Ins. Co.,* 2006 Ohio 2743, ¶17 (Ohio Ct. App. 2006); *see also Gillin v. Indiana Ins. Co.*, No. 17108, 1998 Ohio App. LEXIS 5039, at *7-8 (Ohio Ct. App 1998) ("[T]o show a fiduciary duty owed by an insurance agent, the party claiming breach must show evidence of some special trust or confidence placed in the agent by the insured and recognized by the agent." (citation omitted)).

## IV. ANALYSIS

### A. Negligence Claim

Mentor's complaint for negligence fails for three separate and independently sufficient reasons: it does not properly plead some duty on the part of Marsh, fails to allege that Marsh was the proximate cause of Mentor's loss, and it alleges only economic losses.[6] First, no plausible reading of Mentor's complaint allows this Court to find some duty owed to Mentor by Marsh. Mentor devotes a single sentence to the issue of duty, asserting that "Marsh had a duty to provide a copy of the policy to [Mentor]." (Doc. 46 at ¶ 8.) This is a bare legal conclusion, on which a complaint cannot stand. *Iqbal*, 129 S.Ct. at 1949. The complaint does not assert a source for this duty, nor why a failure to perform this duty would lead to reasonably foreseeable injury. Mentor does not claim, even, that it was unaware of the relevant contents of the policy, only that Marsh failed to provide Mentor with a copy.

Mentor, in opposition, argues that it is well-established that an insurance company has the duty to deliver a policy to its insured and cites a number of cases estopping an insurance company from

---

*See Kentucky ex rel. Gorman v. Kinnard*, No. 92-5890, 1993 U.S. App. LEXIS 20613, at *12 (6th Cir. Aug. 3, 1993) (discussing Michigan, Kansas, and Missouri).

[6] Mentor claims that Marsh's motion to dismiss is poorly taken because Marsh failed to deny Mentor's core factual allegation: that Marsh did not, in fact, deliver a copy the insurance policy. (Doc. 64 at 3 ("[W]here is proof that Marsh did in fact provide a copy of the policy to its insured? Surely that would constitute a basis for its motion. . . .").) This argument is not well-taken: a motion to dismiss must, by definition, take facts pled in the complaint as true. *See Zaluski*, 527 F.3d at 570.

7

denying coverage to an insured who has never received a copy of the relevant policy. (*See id*. at 5-7.)[7] Marsh, however, has never denied Mentor coverage under any policy. (*See, e.g.*, Doc. 64 at 1 ("This matter concerns coverage determination under a commercial policy of insurance issued by the plaintiff [CNA] to [Mentor]. . . . [CNA] denied coverage. . . .").)[8] As Mentor's own complaint makes clear, Marsh did not issue a policy of insurance to Mentor; CNA did.[9]

Second, Mentor fails to allege proximate cause. Mentor, somewhat amazingly, does not claim that it would have altered its actions had Marsh provided a copy of the policy. Mentor, instead, asserts that it "was not in a position to avoid the possibility of violating the Policy." (Doc. 46 at ¶ 13.) Marsh then, is completely correct: "the Court [does not] know that Mentor would not have taken the gamble, for business reasons, of transporting its goods through a non-compliant route through Europe, and outside the policy period, even if Mentor had been provided a copy of the Policy." (Doc. 62-1 at 9.) Mentor does not even respond to this argument, indeed, Mentor appears at one point to almost concede it. (Doc. 64 at 5 ("Shipment of large imaging units of medical equipment to a location overseas . . . necessarily depended upon a number of factors over which [Mentor] had no control.").)

---

[7] Mentor also appears to argue that Marsh owed it a duty to deliver a copy of the insurance contract simply because "[o]verseas shipment of goods from the United States to central [sic] Europe entails measurable risk." (Doc. 64 at 3.) This, charitably, can be described as assuming what it sets out to prove. Mentor, too, arguably makes an argument about negligence involving "reciprocal duties." (*See* Doc. 64 at 4.) The Court chooses to understand this to be part of Mentor's argument about fiduciary duty, although this intention is far from clear. If it was intended to be otherwise, however, that would have been inappropriate and misleading, as it would seem to have been an attempt to persuade the Court to apply reasoning from cases involving the heightened duty of a fiduciary to an ordinary negligence claim.

[8] Setting aside Mentor's unusual citations on this point, it does seem true that an insurance company can be estopped from denying coverage where that company fails to provide the insured a copy of the policy. *See White v. N. Am. Marine Gen. Ins. Co., Ltd.*, No. 06-1781, 2006 U.S. Dist. LEXIS 47503, at *3 (E.D. La. July 12, 2006). Although *White* rests upon a Louisiana statute, the Court is prepared to at least entertain the argument that public policy could, in some situations, have a similar effect.

[9] Mentor asserts that "[t]he [Insurance] Policy was offered <u>through</u> Marsh USA, Inc. by and through its agents, representatives and/or principals" (emphasis added)). (Doc. 46 at ¶ 7.) It does <u>not</u> assert that the policy was issued <u>by</u> Marsh.

8

Finally, Mentor alleges only economic damages, which are not cognizable in an action for negligence. *C.f. Mafcote, Inc. v. Genatt Assocs.*, 2007 U.S. Dist. LEXIS 10117, 18-19 (S.D. Ohio Feb. 14, 2007) ("The economic loss doctrine has been applied to bar negligence claims by insureds against their insurance brokers for failing to procure coverage." (citing *All Erection & Crane Rental Corp. v. Acordia Northwest, Inc.*, 162 Fed. Appx. 554, 558 (6th Cir. 2006); *J.F. Meskill Enterprises, LLC v. Acuity*, No. 05-CV-2955, 2006 U.S. Dist. LEXIS 41491 (N.D. Ohio Apr. 7, 2006)). Mentor alleges "damages in excess of $500,000.00" (Doc. 46 at ¶ 16) that it incurred because Mentor "violat[ed]" the terms of the insurance policy (*id.* at ¶ 13). Mentor also alleges damages "in excess of $500,000.00" because CNA wrongfully denied Mentor insurance coverage. (*Id.* at ¶ 23.) There is no reasonable way to read these as asserting anything other than damage for economic loss. Mentor's argument in opposition to the motion to dismiss, that "[t]his position is unavailing on a pre-answer pleading because there has been no discovery conducted to determine the value of [Mentor's] loss" (Doc. 64 at 4-5) is simply nonsensical.[10] Mentor's claim for negligence is **DISMISSED**.

### B. Breach of Fiduciary Duty Claim

An insurance agent will only be found to have a fiduciary duty to its clients if the insured places "some special trust or confidence in the agent," and the agent is aware of that confidence. *Gillin*, 1998 Ohio App. LEXIS 5039, at *7-8. Mentor, indeed, seems at least somewhat aware of this law. (*See* Doc. 64 at 4 ("[I]f an agent knows that the client is relying upon his expertise, then the agent owes a further duty. . . .").) Yet, Mentor fails to allege <u>any</u> facts in its complaint asserting some special trust or

---

[10] Mentor provides a single citation when attempting to respond to Marsh's "economic loss" argument. (*See* Doc. 64 at 5 (citing *American Mfrs. Mut. Ins. Co. v. Den-Mat Cerinate Dental*, 2001 Ohio 3539 (Ohio Ct. App. 2001).) That case, considering the proper interpretation of a contract for insurance under California law, has no plausible application here – it does not even consider California's economic loss doctrine.

confidence, let alone that Marsh was aware of that trust or confidence.[11]  There is little more that can be said about this claim, which is **DISMISSED**.

### C. Mentor Cannot Amend its Complaint Through Briefing

The Court notes that Mentor's briefing alleges a new claim found nowhere in its complaint. Mentor newly and belatedly argues that Marsh "breached its duty to procure adequate liability coverage [for Mentor]." (Doc. 64 at 2.)  Putting aside the fact that this allegation is directly contrary to the sentence in the complaint that Marsh was CNA's agent, it is axiomatic that Mentor may not amend its complaint in this way. *See Frederico*, 507 F.3d at 202.  The Court, accordingly, has not considered Mentor's arguments relating to such a claim (*see, e.g., id.* at 3 ("Ohio law . . . imposes a duty upon Marsh . . . to exercise reasonable care in acquiring insurance coverage. . . . [A]n insurance agent owes his client a duty . . . in undertaking to acquire coverage that his client requests." (citation omitted)), or any other factual assertions made by Mentor during briefing that cannot be found in its complaint.

Mentor has also asked to file a supplemental brief in opposition to Marsh's motion to dismiss. (*See* Doc. 78.)  While the Court **GRANTS** this request as a procedural matter, it is wholly unavailing. This supplemental brief asserts that Mentor has learned new information during discovery that has bearing on Marsh's motion.  As an initial matter, Mentor seems to assert that it has found "new information" about its own behavior. (Doc. 78-1 at 1 ("[D]ocuments produced in discovery demonstrate that Marsh representatives corresponded with [Mentor's president Rick Conte].").)  Although there are likely circumstances in which a corporation's uncovering of its own behavior will equitably be considered "new" information by a Court, knowledge of the actions taken by Mentor's <u>current</u> president, apparently learned nearly three-years after the commencement of litigation and nearly a year after Mentor filed its third-party complaint, would not appear to qualify.  Finally, as already explained, mere

---

[11] Mentor, indeed, offers only half-hearted opposition to Marsh's motion to dismiss this claim. (*C.f.* Doc. 64 at 5 ("The fundamental basis of [Mentor's] third-party claims against Marsh is negligence.").)

10

communications between an agent for CNA and CNA's policyholders, moreover, would not alter the agent's relationship to those policy holders and Mentor does not even explain how it could.[12] it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frederico*, 507 F.3d at 202 (quotation omitted); *see also Am. Motorist Ins. Co.*, 2006 U.S. Dist. LEXIS 59436, at *35 (N.D. Ohio Aug. 23, 2006).

## V. CONCLUSION

For the aforementioned reasons, Mentor's motion for leave to file supplemental briefing (Doc. 78) and Marsh's Motion to Dismiss (Doc. 62-1) are **GRANTED**.

**IT IS SO ORDERED.**

**s/Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: September 16, 2009**

---

[12] While, <u>if</u> Marsh were acting as CNA's agent and Marsh was charged by CNA with the duty to provide a copy of the policy to Mentor but failed to do so, Marsh's failures may be chargeable to CNA, those facts would still not give rise to a negligence claim <u>by Mentor</u> against Marsh.

11